**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **ROBIN GORDON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 07-2223-STA-tmp** |
| | ) | |
| **GORDON R. ENGLAND, Secretary of** | ) | |
| **the Navy, and DEPARTMENT OF** | ) | |
| **THE NAVY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS OR IN THE**
**ALTERNATIVE MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendants Gordon R. England and Department of the Navy (hereinafter "Defendant")'s Motion to Dismiss or in the alternative Motion for Summary Judgment (D.E. # 138) filed on January 19, 2012. Plaintiff Robin Gordon has filed a response in opposition to Defendant's Motion. On December 3, 2009, this matter was remanded for further consideration of whether Plaintiff was entitled to equitable tolling. On December 29, 2011, the case was transferred to the undersigned for all further proceedings. For the reasons set forth below, Defendant's Motion is **GRANTED**.

<u>**BACKGROUND**</u>

The following facts are not in dispute for purposes of this Motion unless otherwise noted.

**I. Procedural History**

Plaintiff Robin Gordon was employed as an Office Automation Clerk in the Navy Motion Picture Service ("NMPS"), at Naval Support Activity, Millington, Tennessee, until she was laid off in January 2006, due to a reduction in force.  (Def.'s Statement of Fact ¶ 1.)  Ronald Rossman ("Rossman"), Video Program Manager of NMPS, was Plaintiff's first level supervisor.  (*Id.* ¶ 2.) On December 15, 2000, Plaintiff filed a formal EEO complaint, DON 01-62980-002, alleging that Rossman had created a hostile work environment by engaging in an ongoing pattern of racially-motivated harassment.  (*Id.* ¶ 3.)  On June 7, 2001, Plaintiff filed a second formal EEO complaint, DON 01-62980-005, alleging that she was sexually harassed by a male co-worker on March 9, 2001. (*Id.* ¶ 4.)  Plaintiff also claimed discrimination based on sex, race, and reprisal when Rossman allegedly failed to take appropriate corrective action against the male co-worker and those who participated in the March 9, 2001 incident by encouraging the male co-worker.  (*Id.* ¶ 5.)

On June 24, 2002, Plaintiff requested to forego any further administrative remedies and requested a "right to sue" letter for EEO complaint -002.  (*Id.* ¶ 6.)  On June 26, 2002, the EEO dismissed Plaintiff's first EEO complaint -002 because of Plaintiff's request to forego any further administrative remedies before the EEOC.  (*Id.* ¶ 7.)  On October 21, 2002, Defendant issued its federal agency decision for EEO complaint -002 finding that Plaintiff was not discriminated against as alleged and advising Plaintiff of her right to sue if she was dissatisfied with the Agency's decision. (*Id.* ¶ 8.)

Plaintiff filed a lawsuit in federal district court on June 27, 2003, docket number 03-2482-JPM-tmp, following the Agency's final decision on her first EEO complaint.  (*Id.* ¶ 9.)  On November 28, 2003, United States District Court Judge Jon P. McCalla dismissed Plaintiff's 2003

2

lawsuit without prejudice for failure to properly effect service upon Defendants.  (*Id.* ¶ 10.)  Plaintiff did not appeal the dismissal of the 03-2482 lawsuit.  (*Id.* ¶ 11a.)

On April 22, 2004, Equal Employment Opportunity Commission Administrative Judge Barbara Kimmelman dismissed the second EEO complaint, complaint -005, after being advised by counsel for Plaintiff that she "has exercised her rights to litigate all pending matters in the Federal Courts."  (*Id.* ¶ 11b.)  Thereafter, Plaintiff filed a second lawsuit in federal district court on July 27, 2004, docket number 04-2572-SHM-dkv, asserting the same allegations contained in her 2003 lawsuit.  (*Id.* ¶ 12.)  On August 22, 2006, the Court entered an order of dismissal in case number 04-2572-SHM-dkv, based upon Plaintiff's motion for nonsuit, and judgment was entered by the Court on August 28, 2006.  (*Id.* ¶ 13.)  Plaintiff adds that her attorney filed the motion for nonsuit without her knowledge or prior authorization.  (Pl.'s Resp. to Statement of Facts ¶ 13.)  On March 7, 2007, Plaintiff, acting *pro se*, filed a motion for reconsideration, seeking to have the 2004 lawsuit reopened.  (Def.'s Statement of Fact ¶ 15.)[1]  On May 17, 2007, the Court entered an order granting Plaintiff's motion to withdraw her motion to reconsider.  (*Id.* ¶ 17.)[2]

Plaintiff's instant lawsuit, filed on March 19, 2007, was dismissed by this Court on March 7, 2008, for lack of subject matter jurisdiction because Plaintiff's lawsuit was filed late and did not warrant equitable tolling.  (*Id.* ¶ 18.)  Plaintiff successfully appealed the district court's decision, and the case was remanded in order to allow Plaintiff leave to amend her complaint to allege equitable tolling and to permit the district court to decide whether Plaintiff should be entitled to equitable tolling.  (*Id.* ¶ 19.)  Following remand, on March 18, 2010, Plaintiff filed her amended complaint

---

[1] Defendant's Statement of Facts do not contain a paragraph 14.

[2] Defendant's Statement of Facts do not contain a paragraph 16.

alleging that equitable tolling should be applied to her time-barred claims of hostile work environment.  (*Id.* ¶ 20.)

Plaintiff admits that there were no problems between her and her legal representative, Javier Bailey, prior to the untimely filing of Plaintiff's first lawsuit in federal district court on June 27, 2003, docket number 03-2482-JPM-tmp.  (*Id.* ¶ 21.)[3]  Bailey testified that he was in communication with Plaintiff between the time the final agency decision was issued and the late filing of the first 2003 lawsuit.  (*Id.* ¶ 22.)

## II.  Sexual Harassment Claim

Plaintiff claims that on March 9, 2001, she was the victim of sexual harassment while she was in the NMPS Warehouse in Millington, Tennessee.  (*Id.* ¶ 23.)  Rossman, Plaintiff's first line supervisor, was absent from work on March 9, 2001.  (*Id.* ¶ 24.)  Edward McGrath ("McGrath") was acting supervisor in Rossman's absence that day.  (*Id.* ¶ 25.)  McGrath was not in the building at the time of the March 9, 2001 incident.  (*Id.* ¶ 26.)  Plaintiff did not report the incident to McGrath upon his return to the building; nor did she report the incident to McGrath at any other time.  (*Id.*)  Rather, a few days after the incident, another employee whose identity is unknown mentioned that Plaintiff was upset because of something that another employee Nathan Edwards ("Edwards")

---

[3] Plaintiff disputes this statement and asserts that Bailey routinely informed her that "her case was being pursued *properly* and her action would take a long period of time to litigate." Pl.'s Resp. to Statement of Facts ¶ 21 (emphasis added).  However, the deposition excerpt Plaintiff cites does not support her response and does not relate to the period leading up to the filing of her first lawsuit in 2003.  Plaintiff cites her testimony that Bailey told her her "case was being litigated in federal court" and that her "case did take a couple of years to be litigated." Gordon Dep. 283:19–25, Mar. 11, 2011.  Nowhere in this excerpt does Plaintiff show that Bailey informed her the case was being handled "properly" during her first lawsuit.  Plaintiff's testimony actually addressed her contacts with Bailey in 2005, just before he filed the nonsuit in her second case, and not the state of their attorney-client relationship in 2003.  Therefore, Plaintiff has failed to create a dispute concerning this statement of fact.

purportedly did to Plaintiff. (*Id.*)[4] Plaintiff did not report the March 9, 2001, incident to Rossman until March 26, 2001. (*Id.* ¶ 27.)

On March 26, 2001, Plaintiff provided Rossman with an oral and written account of her version of what occurred on March 9, 2001. (*Id.* ¶ 28.) The written submission was signed by Plaintiff and provided that "Nathan [Edwards] grab [sic] me from behind in a restraining hold position. I was yelling to him to get off of me. Nathan yelled (while still holding and restraining me from moving) to Jane take the picture of me and my wife." (*Id.*) Plaintiff also complained that all of the NMPS members with the exception of McGrath were present when the incident occurred. (*Id.* ¶ 29.) Plaintiff identified these co-workers as Nathan Edwards, Jane DeGonzaque, Susan Foster, Shannon Armbruster, Ken Allen, and Rich Rankin. (*Id.*) Plaintiff's March 26, 2001, written account stated that as the co-workers who were present during the incident laughed, Edwards held Plaintiff tighter. (*Id.* ¶ 30.) Plaintiff later gave a detailed statement of her allegations to an EEO investigator. (*Id.* ¶ 31.) Plaintiff told the investigator that Edwards "grabbed her from behind, put me in a restraint lock position, with his private area on my buttocks and his hands wrapped around my breasts." (*Id.*) Plaintiff alleged that others present during the incident chanted "get her, get her." (*Id.*) Plaintiff now alleges that this is how she described the incident to Rossman on March 26, 2001. (*Id.*) Also Plaintiff reported that one of the co-workers, Jane DeGonzaque, took a picture of the incident while Edwards was holding Plaintiff. (*Id.* ¶ 32.)

During the March 26, 2001 meeting with Rossman, Plaintiff told Rossman that she wanted Edwards and her co-workers to apologize and that she also wanted assurances that similar conduct

---

[4] Plaintiff adds that she is without knowledge as to the statements of her co-worker. Pl.'s Resp. to Statement of Facts ¶ 26.

would not happen again.  (*Id.* ¶ 33.)  In response to Plaintiff's complaint, Rossman held meetings on March 26, 2001, with Plaintiff, Edwards, and Plaintiff's other co-workers in an attempt to investigate the allegations.  (*Id.* ¶ 34.)  When Rossman inquired about Plaintiff's allegations, her co-workers gave conflicting accounts of what had happened.  (*Id.* ¶ 35.)[5]  However, all of Plaintiff's co-workers denied that the incident was planned or that Jane DeGonzaque had purposely brought a camera to work so that she could get a picture of the incident.  (*Id.*)  All of Plaintiff's co-workers also denied that they chanted or encouraged Edwards's behavior.  (*Id.*)   Rich Rankin reported to Rossman that he was not present in the work area when the incident occurred.  (*Id.* ¶ 36.)  Rankin later apologized to Plaintiff because he was told to do so by Rossman and because he wanted to keep the peace at work.  (*Id.*)  Rankin did not consider his apology an admission of guilt.  (*Id.*)[6]

Later on March 26, 2001, Rossman scheduled a meeting with Plaintiff and Edwards.  (*Id.* ¶ 37.)  During the meeting, Edwards apologized to Plaintiff and promised that it would not happen again.  (*Id.*)  Rossman scheduled another meeting on March 26, 2001, with the co-workers whom Plaintiff had reported were present during the incident.  (*Id.* ¶ 38.)  Rossman told the employees that Plaintiff felt she deserved an apology from each of them, and Rossman urged them to do so.  (*Id.*)[7]  The co-workers disagreed about Plaintiff deserving an apology from them, yet all of them agreed to make the apology and did so on the morning of March 27, 2001.  (*Id.*)

---

[5] Plaintiff adds that she has no knowledge of the content of Rossman's investigation or the meetings he had with her co-workers.  Plaintiff does assert that her co-workers initially denied the incident.

[6] In response Plaintiff states that Rich Rankin did make an apology; however, Plaintiff has no knowledge of Rankin's subjective thought process.

[7] Plaintiff again states that she was not present during this meeting and has no information upon which she can either admit or deny this statement.

6

Approximately nine weeks after the March 9, 2001 incident, Rossman obtained a copy of the picture taken by Jane DeGonzaque during the incident.  (*Id.* ¶ 39.)[8]  Although the photograph was out of focus, it provided an image of Edwards grabbing Plaintiff and holding her in a different manner than the way Edwards had previously described to Rossman in his account of the incident.  (*Id.*)  After Rossman saw the photograph, he met with Edwards on May 22, 2001.  (*Id.* ¶ 40.)  At that time, Rossman informed Edwards that he would serve a three-day suspension without pay from June 5 through June 7, 2001.  (*Id.*)  Rossman made the decision to suspend Edwards because as a result of further investigation, Rossman concluded that Edwards had not been truthful in his initial statements about the incident.  (*Id.*)  Rossman also directed Edwards to attend the next scheduled class on the prevention of sexual harassment.  (*Id.*)[9]

With the exception of the single incident of March 9, 2011, Plaintiff did not complain to Rossman about any other sexual misconduct or sexually improper behavior directed at her from any co-worker.  (*Id.* ¶ 41.)[10]  No other employee in NMPS who worked under Rossman's supervision has ever complained to Rossman about sexual misconduct or sexually improper behavior by another co-

---

[8] Plaintiff adds that she does not know when Rossman obtained the photo but admits that he did obtain it in due course.

[9] Plaintiff states that she is without knowledge to admit or deny this statement.

[10] Plaintiff has denied this statement.  However, Plaintiff has not cited any evidentiary basis for her denial.  Pursuant to Local Rules of Court, a non-moving party who disputes a moving party's assertion of fact bears the burden of demonstrating that the fact is disputed.  Local Rule 56.1(b)(3).  Furthermore, "[e]ach disputed fact must be supported by specific citation to the record."  *Id.*  Based on Plaintiff's failure to comply with the Local Rules, the Court will deem this fact admitted.  Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion.").

worker.  (*Id.* ¶ 42.)[11]  Edwards was subsequently removed from his probationary position with

NMPS, in part because he failed to attend the sexual harassment training.  (*Id.* ¶ 43.)[12]  At the time

of the March 9, 2001 incident, the Agency had a sexual harassment prevention policy in place.  (*Id.*

¶ 44.)[13]

### III.  The Sixth Circuit's Remand Order

As previously mentioned, on December 3, 2009, the Sixth Circuit entered an order remanding

this case for further proceedings, specifically, to give Plaintiff the opportunity to amend her

complaint and add allegations that might support her request for equitable tolling.  On appeal

Plaintiff admitted that her current suit was filed outside of the 90-day period allowed by her right-to-

sue letter.  Nevertheless, Plaintiff argued that she should be entitled to have the 90-day filing period

equitably tolled.  The Sixth Circuit reviewed the procedural history of Plaintiff's EEOC claims and

her previous federal lawsuits, emphasizing the "wholly incompetent legal representation" of

Plaintiff's previous attorney.[14]  The panel cited Mr. Bailey's failure to meet deadlines, inability to

---

[11] Again Plaintiff states that she is without knowledge to admit or deny this statement.

[12] While Plaintiff admits that Edwards was terminated, she states that she was informed he lost his job "for beyond [sic] acts giving rise to this legal action."  Pl.'s Resp. Statement of Facts ¶ 43.  The Court construes Plaintiff's response to mean that Edwards was discharged from his job for reasons besides his failure to attend the sexual harassment training.  The Court finds that Defendant has simply asserted that Edwards's failure to attend the training was one of several reasons for his termination.  Therefore, the Court finds no actual dispute as to this statement.

[13] Plaintiff denies this statement because she "lacked knowledge of said policy."  Pl.'s Resp. Statement of Facts ¶ 44.  Not only has Plaintiff failed to attach the portions of her deposition she has cited for support, but Plaintiff's lack of knowledge about the policy's existence does not actually show that the policy did not exist.

[14] *Gordon v. England*, 354 F. App'x 975, 979 (6th Cir. 2009).

effect service of process, ineffective communication with his client, and apparent "abandonment" of Plaintiff's case.[15]  The Sixth Circuit was particularly troubled by Bailey's decision to seek a voluntary non-suit as to Plaintiff's second federal complaint without first consulting Plaintiff.[16]  The panel found that Plaintiff had not squarely presented the issue of equitable tolling to the district court by not, for example, amending her complaint to include allegations about her attorney's conduct. Under the "somewhat unique circumstances" presented,[17] the Sixth Circuit concluded that the case should be remanded to give Plaintiff an opportunity to amend her complaint and develop the issue of equitable tolling more fully before the district court.

While stressing the seriousness of Plaintiff's allegations about Mr. Bailey's representation, the Sixth Circuit remarked that Plaintiff would ultimately need to develop a record in support of her equitable tolling theory.  The Court also stated that the district court should consider the five factor-test for applying equitable tolling, particularly Plaintiff's diligence in pursuing her claims and possible prejudice to Defendant.[18]  The panel called attention to other possible bases for equitable tolling based on the conduct of Plaintiff's attorney.

> We acknowledge that Gordon's litigation has not been diligently pursued to date, but whether the failures were the result of Gordon's inaction, her attorney's incompetence, or a combination of the two is unclear on this record. We simply do not know to what extent Gordon's attorney assured her that deadlines were met or did not apply to her case,

---

[15] *Id.*

[16] *Id.* at 982 ("Her attorney went so far as to file a voluntary non-suit in pending federal litigation without Gordon's assent and without even notifying her that her case was dismissed.").

[17] *Id.*

[18] *Id.*; *see also id.* at 983 (Guy, J., concurring in result) ("Although the majority suggests that plaintiff showed diligence in pursuing her third Title VII complaint pro se, the record is silent concerning whether she diligently pursued her claims in earlier proceedings.").

or that she should simply trust him to attend to any problems or pending legal notices. In fact, if her attorney misrepresented his compliance with the statutory deadlines, it would further bolster Gordon's claim for equitable tolling.[19]

Furthermore, the Court acknowledged that it did "not know exactly what the attorney was telling [Plaintiff]."[20]  On remand, the district court was instructed "to decide whether Plaintiff should be entitled to equitable tolling."[21]

On remand, Plaintiff through her new attorney filed an Amended Complaint (D.E. # 45), alleging among other things that her claims were entitled to equitable tolling.[22]  According to the

---

[19] *Id.* at 982.

[20] *Id.* at 980.

[21] *Id.* at 983.

[22] Upon remand, the presiding judge was then-United States District Judge Bernice B. Donald.  On March 5, 2010, Judge Donald set an evidentiary hearing "to elicit evidence with respect to equitable tolling" (D.E. # 43).  The evidentiary hearing was subsequently continued on joint motion of the parties but never reset.  It appears that the evidentiary hearing was not reset right away, at least in part, because (1) Plaintiff was appointed a new attorney after her previous attorney moved from the area (Mot. to Substitute Counsel, June 28, 2010, D.E. # 57); and (2) the parties consented to have the case heard by the United States Magistrate Judge (Scheduling Order, July 14, 2010, D.E. # 61).  Then, on February 14, 2011, Defendant filed a motion to reassign the case to Judge Donald because Defendant had not actually consented to trial before the Magistrate Judge (D.E. # 74).  The Magistrate Judge granted Defendant's motion on February 22, 2011, and the case was reassigned to Judge Donald (D.E. # 77).  This matter was re-assigned to the undersigned for all further proceedings on December 29, 2011, and Defendant filed the instant Motion raising the equitable tolling issue on January 19, 2012.

There are circumstances where an evidentiary hearing on the issue of equitable tolling is required in habeas cases.  *See e.g. Ata v. Scutt*, 662 F.3d 736, 742 (6th Cir. 2011) ("Although an evidentiary hearing need not be provided as a matter of right, an evidentiary hearing is required when sufficiently specific allegations would entitle the petitioner to equitable tolling on the basis of mental incompetence which caused the failure to timely file.").  The Court is unaware of any authority from the Sixth Circuit requiring an evidentiary hearing in the Title VII context.  *See Moon v. Aeronca, Inc.*, 541 F. Supp. 747, 752 n.5 (S.D. Ohio 1982).  Both parties have now had a full opportunity to pursue discovery on the issue of equitable tolling and present the evidence to

allegations of the Amended Complaint, Bailey failed to provide Plaintiff with proper representation during either her first or second Title VII actions before this Court.  (Am. Compl. 5, ¶ 1.)  For example, Bailey failed to provide proper service to the defendants named in Plaintiff's first Title VII action within the statutory 120 days, resulting in the dismissal of the action.  (*Id.* ¶¶ 2, 8.)  Following the dismissal of Plaintiff's first suit, Bailey provided written notice to the EEOC that Plaintiff's second complaint would be pursued before this Court, thereby removing Plaintiff's second EEO charge from the administrative process.  (*Id.* ¶ 3.)  The Amended Complaint further alleges that at the time that Bailey made the request to remove the second charge from the EEOC process, Plaintiff had no legal action pending and had yet to file any suit in this Court with respect to the allegations made in Plaintiff's second EEO charge.   (*Id.* ¶ 4.)   Bailey also failed to provide proper correspondence to Plaintiff during his representation and failed to communicate with Plaintiff about developments in her case.  (*Id.* ¶¶ 5, 6, 12.)  For instance, Plaintiff was unaware that Bailey had addressed a letter to the EEOC stating that Plaintiff intended to proceed with her second EEO charge in federal court.  (*Id.* ¶ 7.)  Bailey also failed to consult with or seek approval from Plaintiff to request a voluntary dismissal of her second Title VII action.  (*Id.* ¶ 9.)  Plaintiff only learned of the dismissal of her second Title VII case when she herself contacted the clerk of court to ascertain the status of the case.  (*Id.* ¶ 10.)  Based on these allegations, the Amended Complaint requests that the Court equitably toll the 90-day period in which Plaintiff had to file her judicial complaint.

## STANDARD OF REVIEW

---

the Court in their briefing on Defendant's Rule 56 motion.  The evidence cited is largely undisputed.  Neither party has requested an evidentiary hearing, and the Court finds that a hearing on the issue of equitable tolling would not assist the Court in making its determination of the issue.

Defendant argues that Plaintiff has failed to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure and, in the alternative, that Plaintiff cannot meet her burden to survive summary judgment under Rule 56(a).  Even though Defendant bases its Motion in part on Rule 12(b)(6), Defendant has attached to its brief evidence such as deposition transcripts and other documents which are not part of the pleadings in this case.  For her part, Plaintiff has responded to Defendant's Motion by attaching exhibits and evidence in support of her position.  Plaintiff has not argued that she lacked an opportunity to conduct discovery.  In fact, the parties appear to have engaged in a full discovery period following remand.[23]  For these reasons, the Court finds that both parties have had "a reasonable opportunity to present all the material that is pertinent to the motion" and are on notice that Defendant's Motion may be treated as a motion for summary judgment.[24]  Therefore, there is no reason for the Court to confine its analysis to the pleadings, and the Court will take up Defendant's Motion pursuant to Rule 56.

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment if the moving part "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[25]  In reviewing a motion for summary judgment, the evidence

---

[23] The deadline for completing discovery was June 30, 2011, and the record shows that the parties filed a number of motions related to discovery.  *See* Scheduling Order June 7, 2011 (D.E. # 106).

[24] Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

[25] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

must be viewed in the light most favorable to the nonmoving party.[26]  When the motion is supported

by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his

pleadings but, rather, must present some "specific facts showing that there is a genuine issue for

trial."[27]  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material

facts."[28]  These facts must be more than a scintilla of evidence and must meet the standard of

whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party

is entitled to a verdict.[29]  When determining if summary judgment is appropriate, the Court should

ask "whether the evidence presents a sufficient disagreement to require submission to a jury or

whether it is so one-side that one party must prevail as a matter of law."[30]

Summary judgment must be entered "against a party who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial."[31]  In this Circuit, "this requires the nonmoving party to 'put up or

---

[26] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[27] *Celotex*, 477 U.S. at 324.

[28] *Matsushita*, 475 U.S. at 586.

[29] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[30] *Id.* at 251–52.

[31] *Celotex*, 477 U.S. at 322.

shut up' [on] the critical issues of [her] asserted causes of action."[32]  Finally, the "judge may not

make credibility determinations or weigh the evidence."[33]

## ANALYSIS

In its Motion for Summary Judgment, Defendant argues that Plaintiff has not met her burden

to show that her claims are entitled to equitable tolling.  As such, Defendant contends that it is

entitled to judgment as a matter of law as Plaintiff's claims are now untimely.  In the alternative,

Defendant seeks summary judgment on the merits of Plaintiff's claims for hostile work environment

on the basis of sexual harassment.  The Court will consider each argument in turn.

## I. Equitable Tolling

In its Motion for Summary Judgment, Defendant seeks judgment as a matter of law on all

of Plaintiff's claims, arguing that the claims were filed out of time and Plaintiff has failed to show

that she is entitled to equitable tolling.  Defendant asserts that in order to save her untimely claims,

Plaintiff must show that she is entitled to toll the filing period from the date of the final agency

decision, October 21, 2002, until the date on which she filed the present lawsuit, March 19, 2007,

a span of 1,520 days.  It is undisputed that Plaintiff's first lawsuit filed on June 27, 2003, was filed

out of time. According to Defendant, Plaintiff has failed to explain the delay in filing her first suit

or otherwise show why equitable tolling would be proper as to that late filing.  Defendant argues that

Plaintiff had at least constructive notice of the filing deadline by and through her attorney Mr. Bailey.

---

[32] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[33] *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 569 (6th Cir. 2012); *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

14

The evidence shows that Plaintiff through Bailey sought a right-to-sue letter for the purpose of bringing the action in federal court. Plaintiff has also failed to show that she diligently pursued her claims from 2002 to 2004 and instead blames Bailey for a lack of communication during that time. When Plaintiff did have contact with her attorney, Plaintiff simply accepted Bailey's explanation that it would take time to litigate her case to a conclusion in federal court. As for the prejudice equitable tolling would work, Defendant argues that the memories of witnesses with relevant information will have faded by now and that some relevant documents are no longer available. Defendant finally argues that Plaintiff cannot show that her attorney abandoned her case. For all of these reasons, Defendant asserts that Plaintiff's filing deadlines should not be equitably tolled for any her claims.

In her response in opposition, Plaintiff argues that he has presented evidence to show that she is entitled to equitable tolling of her claims. Plaintiff contends that her former attorney failed to act in her best interest, committed serious legal mistakes, and ultimately abandoned her case after filing a voluntary non-suit without her knowledge. Plaintiff also asserts that Bailey would not communicate with her, particularly after Plaintiff moved to another state in 2006. Plaintiff maintains that she had no knowledge, actual or constructive, of the 90-day filing deadline for her judicial complaints. Instead, Plaintiff relied on her attorney to advise her and take appropriate action to prosecute her case. When Bailey finally broke off communication, Plaintiff took matters into her own hands and acted *pro se* to protect her rights. Plaintiff disagrees that equitable tolling will somehow prejudice Defendant. Defendant has been on notice of Plaintiff's claims since she filed her EEO charges, which should have prompted Defendant to maintain records related to her claims. Finally, Plaintiff argues that she reasonably remained ignorant of the filing requirement because she

trusted and relied on her attorney to make sure that the deadlines were met.  Under these circumstances, Plaintiff contends that the Court should equitably toll her claims.

It is undisputed in this case that Plaintiff filed this suit more than 90 days after the dismissal of her second administrative charge by the EEOC.  Therefore, the Court can only reach the merits of Plaintiff's claims if Plaintiff can establish that she is entitled to equitable tolling.[34]  Federal courts apply the doctrine of equitable tolling doctrine sparingly.[35]  As such, "equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control."[36]  Moreover, "absent compelling equitable considerations, a court should not extend limitations by even a single day."[37]  The Sixth Circuit has identified five useful factors when considering whether equitable tolling is warranted: (1) lack of notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement.[38]  These factors are not exhaustive, and the "propriety of equitable tolling must necessarily be determined on a case-by-case basis."[39]

---

[34] *McClendon v. Sherman,* 329 F.3d 490, 494 (6th Cir. 2003) (discussing equitable tolling in the habeas context).

[35] *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); *Robertson v. Simpson,* 624 F.3d 781, 783 (6th Cir. 2010).

[36] *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560–61 (6th Cir. 2000).

[37] *Id.*

[38] *Andrews v. Orr,* 851 F.2d 146, 151 (6th Cir. 1988)*.*

[39] *Truitt v. Cnty. of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998).

16

As the Sixth Circuit stated in its order remanding this case, attorney conduct can justify equitable tolling under certain circumstances.[40]  The Sixth Circuit has found equitable tolling to be proper in cases where an attorney effectively abandons his client and the case.  Attorney abandonment might occur, for example, when an attorney is incapacitated during the relevant filing period.  In *Cantrell v. Knoxville Community Development Corp.,* 60 F.3d 1177 (6th Cir. 1995), the plaintiff's attorney suffered from "mental instability" and as a result failed to file a Title VII suit within 180 days of the alleged discriminatory act.[41]  Although the district court applied the doctrine of equitable tolling to save the claim, the Sixth Circuit remanded for further analysis of counsel's mental state during the 180-day filing period as well as the plaintiff's own diligence in pursuing his claim.[42]  In a more recent case, *Robertson v. Simpson,* 624 F.3d 781 (6th Cir. 2010), the Sixth Circuit concluded that an attorney's drug abuse, which effectively incapacitated counsel during the habeas filing period, might justify equitable tolling.[43]  The Sixth Circuit has also cited with approval cases where equitable tolling was applied because of an attorney's significant misrepresentations and

---

[40] *Gordon*, 354 F. App'x at 980.  Based on the order remanding the case, it is clear that the Court should still consider the five-factor test for equitable tolling, particularly Plaintiff's diligence in pursuing her claims.  *Id.* at 982 n.3.

[41] *Cantrell*, 60 F.3d at 1180.

[42] *Id.* The Sixth Circuit held that the district court erred by taking judicial notice of the attorney's "mental instability."  *Id.*  The opinion never describes in any detail what constituted the "mental instability."

[43] *Robertson*, 624 F.3d at 785–86.

17

errors.[44]  Nevertheless, a plaintiff's "garden variety claim of excusable neglect" on the part of her attorney will not justify equitable tolling to rescue an untimely cause of action.[45]

With these general principles in mind, the Court now considers whether Plaintiff has met her burden to show why equitable tolling would be proper.  For the following reasons, the Court will make a separate determination as to whether equitable tolling is proper for each of Plaintiff's EEO charges.  First, each EEO charge alleges separate and distinct discriminatory conditions, the first charge alleging discrimination on the basis of Plaintiff's race and the second alleging sexual harassment.  Second, each charge was filed separately and at different times, and Plaintiff received separate right-to-sue notices for each charge at different times.  Each charge, thus, had a different 90-day filing period.  Perhaps most importantly, the circumstances supporting the application of equitable tolling are markedly different as to each claim.  The race claims alleged in the first EEO charge were not initially filed in federal court in a timely manner, and so the Court must consider whether the initial 90-day filing period should be equitably tolled under the relevant circumstances.  On the other hand, the gender claim alleged in the second EEO charge was properly filed in a timely judicial complaint only to be dismissed later on counsel's motion for voluntary nonsuit.  For this claim, the Court must consider whether the dismissal and the conduct of Plaintiff's lawyer justify

---

[44] *See Burton v. United States Postal Serv.*, 612 F. Supp. 1057 (N.D. Ohio 1985) (applying equitable tolling where the plaintiff's attorney failed to contact the plaintiff after an EEOC interview, abandoned the case and left town, and waited almost twenty days after the plaintiff completed his written complaint to the EEOC to mail the document); *Seitzinger v. Reading Hosp. & Med. Ctr.,* 165 F.3d 236 (3d Cir. 1999) (finding a "sufficient claim of attorney abandonment" and applying equitable tolling where an attorney had affirmatively misrepresented that he timely filed a Title VII complaint).

[45] *Irwin*, 498 U.S. at 96.

the equitable tolling of the gender discrimination claim.  Therefore, the Court will analyze the equitable tolling issue for each of Plaintiff's claims in turn.

## A.  Race Discrimination

It is undisputed that on December 15, 2000, Plaintiff filed EEO charge DON 01-62980-002, alleging that Rossman had treated Plaintiff differently on account of her race and created a hostile work environment by engaging in an ongoing pattern of racially-motivated harassment ("the race discrimination claim").[46]  It is further undisputed that on June 24, 2002,  Plaintiff through counsel requested that the EEOC dismiss this charge, and on October 21, 2002, Defendant issued its federal agency decision and advised Plaintiff of her right to sue in a United States district court.  The undisputed evidence shows that Plaintiff did not file suit in this Court, civil no. 03-2482-JPM-tmp ("the first suit"), until June 27, 2003, that is, 248 days after the final agency decision.  Plaintiff's first suit was eventually dismissed without prejudice for failure to effect service under Federal Rule of Civil Procedure 4(m).  Plaintiff has attempted to state the same claim in subsequent judicial complaints filed with this Court, including the Amended Complaint in the case at bar.  The fact remains, however, that Plaintiff's first suit alleging this claim was filed well outside of the 90-day filing period.  Putting aside all of the later procedural history of the race discrimination claim, the Court holds that before the Court considers the merits of the claim, Plaintiff must first establish that

---

[46] The fact allegations stated in the EEO charge are the facts supporting Plaintiff's claims for racial discrimination in Count II of her Amended Complaint and her claim for "Title VII (Disparate Treatment)" in Count III.  *See* Am. Compl. 7–9.  For the reasons that follow, the Court holds that equitable tolling of both of these time-barred claims is not justified.

she is entitled to equitable tolling for the period of delay between the initial agency decision and the filing of her first suit.[47]

Based on the record at summary judgment, the Court holds that Plaintiff has failed to show that equitable tolling is proper for her race discrimination claim. As an initial matter, the Sixth Circuit has held that the 90-day limitations period for filing a judicial complaint begins to run on the fifth day following the EEOC's mailing of a right-to-sue letter to the claimant's residential address of record.[48] In this case, the final agency decision with the right-to-sue notice was issued by Defendant on October 21, 2002. Applying the five-day rule and assuming that Plaintiff received a copy of the final agency decision, the Court holds that Plaintiff's 90-day filing period began roughly on October 26, 2002, and closed on January 25, 2003. Because Plaintiff did not file her judicial complaint until June 27, 2003, the Court finds that her filing was approximately 154 days late. The relevant inquiry then is whether equitable tolling should apply for this period of delay.

Viewing the record evidence in the light most favorable to Plaintiff, none of the relevant factors weigh in favor of equitably tolling the filing deadline for this claim. First, the Court holds that Plaintiff had actual notice of the filing requirement. The Sixth Circuit has held that counsel's receipt of an agency decision containing a right-to-sue notice constitutes actual knowledge of the filing requirement, "destroy[ing] any possible basis for applying the equitable tolling doctrine."[49]

---

[47] The Court highlights the fact that Plaintiff has not made any specific allegations in her Amended Complaint about why equitable tolling would be proper as to this period of delay. Despite this failure to plead that Bailey's conduct caused her first suit to be late filed, the Court will reach the issue here.

[48] *Graham-Humphreys*, 209 F.3d at 557.

[49] *Ball v. Abbott Adver., Inc.*, 864 F.2d 419, 421 (6th Cir. 1988); *Santini v. Cleveland Clinic Fla.*, 232 F.3d 823, 825 (11th Cir. 2000) (holding that the plaintiff's admission that she

Here Plaintiff was represented by counsel from February 2002 and throughout the proceedings of her first suit.[50]  Her attorney was copied on the letter at his office address, which was 50 N. Front Street, Memphis, Tennessee 38102.[51]  Bailey's unrefuted testimony is that he received a copy of the right-to-sue letter,[52] and Bailey also claims that he discussed it with Plaintiff.[53]  There is also evidence that Plaintiff herself received the right-to-sue notice.  The Sixth Circuit has held that the mailing of the right-to-sue notice to a claimant's record residential address gives rise to a presumption of actual delivery and receipt within five days of mailing.[54]  The plaintiff may rebut that presumption with proof that she did not receive notification within that period.[55]  Plaintiff has admitted that the notice was correctly addressed to her residence, 7840 Highway 51 N, #12, Millington, Tennessee 38053, though Plaintiff states that she does not recall whether she actually received it.[56]  Plaintiff's testimony that she cannot recall whether she received the notice, even when

had actual knowledge of a right-to-sue notice eliminated grounds for equitable tolling).  *See also Hopkins v. United Parcel Serv.*, No. 99-3225, 2000 WL 923458, at *3 (6th Cir. June 29, 2000); *Basnett-Pinkerton v. Sky Chefs, Inc.*, Nos. 93-3725, 93-3789, 1994 WL 408194, at * 2 (6th Cir. Aug. 3, 1994); *Colquett v. Rockford Register Star*, No. 00 C 51215, 2001 WL 699933, at *2 (N.D. Ill. June 21, 2001) ("Notice to an attorney satisfies this condition because he is the individual in charge of proceeding with the litigation and aware, perhaps more aware than the claimant, of the importance of such notice.").

[50] Bailey Dep. 99:18–100:1.

[51] Def.'s Mot. Summ. J., ex. 3 (D.E. # 138-4).

[52] Bailey Dep. 90:6–91:7,

[53] *Id.* at 92:5–22.

[54] *Graham–Humphreys*, 209 F.3d at 557.

[55] *Id.*

[56] Gordon Dep. 169:23–170:8, 172:2–173:22 (testifying that the final agency decision with the right-to-notice letter was addressed to her at her then-residence and that she could not

viewed in a light most favorable to her, has not rebutted the presumption of actual delivery and receipt of the notice. Based on the fact that both Bailey and Plaintiff actually received the notice, the Court finds that Plaintiff had actual knowledge of the filing requirement. For this reason alone, the Court lacks "any possible basis for applying the equitable tolling doctrine" to Plaintiff's race discrimination claim.

Second, even if the Court assumed that Plaintiff and Bailey did not have actual knowledge of the filing requirement, the Court finds that Plaintiff certainly possessed constructive knowledge of the 90-day filing period. The Sixth Circuit has remarked that "[c]onstructive knowledge of a time limit will usually be imputed when the plaintiff retains an attorney within the limitations period."[57] It is undisputed that Plaintiff had retained Bailey prior to the commencement of the limitations period. Plaintiff had retained Bailey in February 2002 and the 90-day filing period opened on October 26, 2002. As such, Plaintiff had at least constructive notice of the filing requirement as to this claim.

Third, the Court finds that even if it could be said that Plaintiff lacked actual or constructive knowledge of the filing requirement, Plaintiff has failed to show that she reasonably remained ignorant of the 90-day filing period. Plaintiff repeatedly stated in her deposition was that she was "ignorant of the law"[58] and relied on Bailey as "an officer of the court."[59] While the Court agrees

recall whether she received it).

[57] *Weigel v. Baptist Hosp. of East Tenn.*, 302 F.3d 367, 376 (6th Cir. 2002) (citing *Jackson v. Richards Med. Co.*, 961 F.2d 575, 579 (6th Cir. 1992)). *See also Wood v. Summit Cnty. Fiscal Office*, 377 F. App'x 512, 515 (6th Cir. 2010).

[58] *E.g.* Gordon Dep. 148:6 ("I was ignorant in the law."), 154:24–25 ("I'm ignorant in how the court system worked."), 155:17–18 ("I'm ignorant in the law. I don't know how these cases - - how long these cases take."), 283:21–22 ("I'm ignorant with the law and how this

that an officer of the court must be worthy of the public trust, "[i]t is well-settled that ignorance of the law alone is not sufficient to warrant equitable tolling."[60]   Standing alone then, Plaintiff's ignorance of the filing requirements for her judicial complaint will not justify the application of equitable tolling.  Plaintiff's admission that she was unfamiliar with the filing requirements for her judicial complaint should have prompted a reasonable person to seek out that information, perhaps from her attorney or another reliable source.  The Court finds that Plaintiff's choice to remain ignorant of the law was, therefore, unreasonable.  As such, this factor does not support the equitable tolling of Plaintiff's filing deadline for her race discrimination claim.

Fourth, despite evidence that Plaintiff acted diligently at other times, the Court finds that Plaintiff has failed to show that she acted diligently to pursue her first suit during this phase of her case.  It is true that Plaintiff filed a timely EEO charge and retained an attorney whom she believed would assist her in bringing her case to a conclusion.  The Court finds that these facts certainly suggest diligence in initiating the administrative proceedings.  However, there is no evidence that Plaintiff diligently pursued the claim to bring it to federal court.  Plaintiff admitted in her deposition that she knew Bailey had had her charge removed from the administrative process and intended to

---

process worked.").

[59] *E.g. id.* at 149:20–21 ("And I believed him and I trusted him as a [sic] officer of the court."), 148:8–9 ("As an officer of the court, I believe Mr. Bailey.  He told me he had all this legal experience in the court system."), 153:11–12 ("As a [sic] officer of the court, I believed Mr. Bailey."), 155:5–6 ("And I believed him as a [sic] officer of the court."), 155:15–16 ("And as a [sic] officer of the court, I believed him."), 283:23–25 ("And I believed that as a [sic] officer of the court, that my case did take a couple of years to be litigated.").

[60] *Graham-Humphreys*, 209 F.3d at 561 (quoting *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991) (*per curiam*)).

file a judicial complaint in federal court.[61]  Plaintiff testified that Bailey told her he would be filing

her complaint but that she never asked him when he was going to file or even what the filing

deadline was.[62]  As previously discussed, the Court finds that Plaintiff had actual and constructive

notice of the filing deadline.  And yet Plaintiff has not adduced any specific evidence of what steps

she took to insure that her claim would be filed by the deadline and heard in federal court in a timely

manner.  It is not even clear how much Plaintiff communicated with Bailey at this stage of the case.

Although Plaintiff testified about making phone calls to Bailey or meeting with Bailey at his office,

Plaintiff was vague about how many times she checked the status of her case[63] or when these

contacts occurred.[64]  For example, Plaintiff testified that she followed-up with Bailey at some point

(she did not know when exactly) to check on the status of her case, at which time Bailey told her he

had filed the complaint.[65]  However, Plaintiff went on to admit that this occurred some time after

---

[61] Gordon Dep. 154:14–16.

[62] *Id.* at 154:17–22 ("He told me he was going to file my first complaint in the federal court, and I believed him.  I'm ignorant in how the court system worked.").

[63] *Id.* at 138:2–8.  Plaintiff stated that she thought she met with Bailey at his office five times, *id.* at 139:2–9.; however, she did not specify whether these meetings occurred during the relevant time period only, or whether she had five meetings with Bailey during the entire time he represented her.

[64] The Court finds Plaintiff's deposition testimony especially unhelpful on this point because Plaintiff simply gave the same answer whenever she was asked about the substance of any conversations she had with Bailey.  In addition to the fact that Plaintiff had no evidence of when the calls took place, Plaintiff repeatedly stated that every time she called Bailey, he simply stated that her case was in federal court and would take time to bring to a conclusion.  *E.g.* Gordon Dep. 131:4–7, 132:5–9, 132:23–25, 135:1–3, 136:18–21, 137:12–16, 138:10–11, and 138:21–22.  Plaintiff never asked Bailey for a more definite answer about the status of the case or pressed for more details about what stage the proceedings were in, even when he simply gave her the same answers time after time.

[65] *Id.* at 155:1–18 ("I can't tell you the specific times that I called him.").

June 27, 2003, the date on which she signed the first judicial complaint and Bailey filed it.[66]  And even though the complaint was filed out of time, Plaintiff has failed to show how she diligently pursued her claim once the first suit was filed.  The record shows that after there was no activity in the first suit and no response to a show cause order, the complaint was dismissed for failure to effect service within 120 days of filing.  Plaintiff has adduced no evidence to prove that she acted diligently during this period of delay.  Based on the lack of detail in Plaintiff's testimony,[67] Plaintiff has not adduced sufficient evidence to show that she acted diligently to pursue her race discrimination claim during the relevant period of delay.  Therefore, the Court finds that Plaintiff's lack of diligence does not favor equitable tolling of this claim.

Fifth, courts will consider how equitable tolling might prejudice the defendant.  "Prejudice may only be considered if other factors of the test are met and therefore can only weigh in [the defendant's] favor."[68]  Because the other factors of the test are not met here, the Court need not reach the issue of how equitable tolling might prejudice Defendant.

In short, the Court holds that Plaintiff is not entitled to equitable tolling based on the Court's analysis of the five factors typically used to consider this issue.  The Court finds that in this case

---

[66] Plaintiff testified that she could prove when this conversation occurred because Bailey gave her a copy of the complaint and Plaintiff informed him that it was not correct.  *Id.* at 156:3–12.  Plaintiff went on to admit that Bailey gave her this incorrect complaint and she signed it on or about June 27, 2003, which is the date Bailey filed the first suit.  *Id.* at 166:3–25, 167:13–19.

[67] Plaintiff was deposed on March 11, 2011, and admittedly her inability to recall events in 2002 and 2003 is not surprising.  And yet, in order to avail herself of equitable tolling, Plaintiff bears the burden to demonstrate how she pursued her claim diligently at that time.

[68] *Townsend v. Soc. Sec. Admin.*, 486 F.3d 127, 132 (6th Cir. 2007) (citation omitted and ellipsis altered).

Plaintiff had actual and constructive knowledge of the filing requirement.  On that basis alone, equitable tolling is not proper as to Plaintiff's race discrimination claim.  Even assuming Plaintiff had no knowledge of the filing requirement, Plaintiff has not shown that she remained reasonably ignorant of the requirement.  Above all, Plaintiff has not proven that she pursued her claim with diligence during the relevant time period.  For these reasons, Plaintiff has not met her burden to benefit from the equitable tolling of this claim.

Perhaps most importantly, Plaintiff has not carried her burden to show that her attorney abandoned her case or engaged in some misconduct during the filing period for this claim.[69]  First, there is no evidence that Bailey was somehow incapacitated during the filing period or unable to act on Plaintiff's behalf, making this case distinguishable from *Cantrell*.  The evidence shows that during the administrative process, Bailey had pursued a possible settlement of Plaintiff's claims.[70]  Bailey testified that following the issuance of the final agency decision, he discussed the decision with Plaintiff though he could not be certain that they discussed the 90-day filing requirement.[71]  Second, there is no evidence that Bailey engaged in any misconduct such as misrepresenting to Plaintiff that the complaint was filed on time even though it was not, distinguishing this case from the facts presented in *Burton*.[72]  Plaintiff testified that Bailey told her the suit was filed and would

---

[69] *Cantrell*, 60 F.3d at 1180 (emphasizing the attorney's incapacitation during the filing period itself).

[70] Bailey Dep. 35:4–15.

[71] *Id.* at 92:5–18.

[72] *See also Seitzinger*, 165 F.3d at 241–42 (applying equitable tolling where an attorney had affirmatively misrepresented that he timely filed a Title VII complaint).

take some years to bring to a conclusion.[73]  Plaintiff has no evidence, however, that Bailey made

these statements during the period before he actually filed the judicial complaint, that is, that his

statements were false when he made them.[74]  And as previously discussed, Plaintiff admitted that she

did not sign a judicial complaint in her first suit until June 2003.  Viewing her testimony in the light

most favorable to her, Plaintiff has failed to prove that Bailey misrepresented to her that her first suit

had been filed when in fact it had not.

Rather than this being an instance of attorney misconduct or deception, Bailey's unrefuted

testimony was that he delayed filing the first suit because he was waiting for the final agency

---

[73] *E.g.* Gordon Dep. 131:4–7, 132:5–9, 132:23–25, 135:1–3, 136:18–21, 137:12–16, 138:10–11, 138:21–22.

[74] Plaintiff came close to showing this during one portion of her deposition as she explained what happened after the agency decision was issued.

Q. . . .  He said I'm going to remove it out of the EEOC, when was the next time you talked to your lawyer?

A. I could have went to his office and had a discussion with him, and he said he was going to - - he filed that case in federal court.

Q. When was that?  He told you he filed the case in federal court?

A. Yes, he told me verbally.

Q. What else did he tell you during that meeting , if anything, that you can recall?

A. That's the only thing he told me, that he was filing the case in EE - - in federal court.

Gordon Dep. 129:4–16.

The Court finds that Plaintiff was unable to state clearly and unequivocally what Bailey actually told her about the filing of her complaint.  In this single line of questioning, Plaintiff testified that Bailey "was going to" or "was filing" in federal court and that he "filed" in federal court. Plaintiff also did not state when this occurred.  The Court would add that this type of response is illustrative of Plaintiff's deposition testimony generally.

decision and right-to-sue notice as to Plaintiff's second EEO charge alleging sexual harassment.[75]

According to Bailey, he waited so that he could file one lawsuit based on the two separate EEO

charges.[76]  Such an intentional tactical decision, even if ill-advised or made without consulting

Plaintiff, is consistent with "garden variety neglect" and not attorney abandonment or misconduct.[77]

Therefore, the Court concludes that equitable tolling due to attorney abandonment is not justified

here.  As a result, Defendant is entitled to judgment as a matter of law on Plaintiff's time-barred race

discrimination claim, and Defendant's Motion is **GRANTED** on this issue.

## B.  Sexual Harassment

It is undisputed that on June 7, 2001, Plaintiff filed EEO charge DON 01-62980-005, alleging

a hostile work environment due to sexual harassment ("sexual harassment claim").  It is further

undisputed that upon request of Plaintiff through counsel, an EEOC administrative judge dismissed

the charge on April 22, 2004.  Plaintiff filed a lawsuit in federal district court on July 27, 2004,

docket number 04-2572-SHM-dkv ("the second suit"), alleging the same allegations as in her 2003

---

[75] Bailey Dep. 100:3–18.  Even so, Bailey still filed the complaint alleging sexual harassment before he received the right-sue-notice for that claim.  Nevertheless, Bailey was obviously aware of the 90-day filing requirement because he admitted that he already had received the first right-to-sue notice and knew he could not proceed in federal court without it. *Id.* at 95:13–23 ("So I don't think I would have filed it without [the right-to-sue notice] because I know what was going to happen to it.").  The Court also concludes that Bailey later filed Plaintiff's second judicial complaint within 90 days of receiving the right-to-sue notice for that claim.  These facts all corroborate Bailey's undisputed testimony that he intentionally elected to wait to file the first judicial complaint.

[76] *Id.*

[77] *Whalen v. Randle*, 37 F. App'x. 113, 120 (6th Cir. 2002) ("[T]he remedy for negligence by a party's lawyer is generally a legal malpractice suit or an ineffective assistance of counsel claim, not forcing the opposing party to defend against a stale claim.").

lawsuit including her claim for sexual harassment.[78]   Defendant does not dispute that Plaintiff's second suit was timely, at least in so far as the second suit alleged the sexual harassment claim within 95 days of the dismissal of the EEO charge.  It is also undisputed that on August 22, 2006, the Court entered an order of dismissal in the second suit, based upon Plaintiff's motion for nonsuit. The Court holds that the dismissal without prejudice of Plaintiff's second suit did not toll the 90-day filing period for her sexual harassment claim.[79]  Viewing the evidence in the light most favorable to Plaintiff, Bailey filed the nonsuit without her knowledge or consent.[80]  Plaintiff then sought reconsideration of the nonsuit and ultimately filed the case at bar on March 19, 2007, alleging the same claims as her second suit.  The issue presented then is whether Plaintiff is entitled to have her sexual harassment claim equitably tolled on the basis of Bailey's conduct.

Based on the record before it, the Court holds that Plaintiff has adduced evidence to show that equitable tolling is proper as to her claim for sexual harassment.  First and foremost, Plaintiff has shown that she pursued this claim diligently, first by bringing her administrative charge and then

---

[78] Defendant has not argued that the sexual harassment claim is time-barred because it was alleged in the first suit.  As already discussed, the first suit was never served on Defendant and finally dismissed.  The Court finds that Plaintiff had not received the final agency decision and right-to-sue notice for her sexual harassment claim at the time the first suit was dismissed. The issue then would be what effect the pleading of the sexual harassment claim in the first suit has on the Court's equitable tolling analysis of this claim.  Defendant has not raised that specific issue.  The Court declines to reach the issue here and will assume for purposes of this Motion that Plaintiff filed a timely a judicial complaint as to this claim because it was brought in federal court within 95 days of the final agency decision.

[79] *Rice v. Jefferson Pilot Fin. Ins. Co.*, 578 F.3d 450, 457 (6th Cir. 2009) (citing *Wilson v. Grumman Ohio Corp.*, 815 F.2d 26, 27 (6th Cir. 1987)).

[80] Gordon Dep. 283:17–284:4 ("He did not discuss any of that [i.e. the nonsuit] with me. Because I would not have allowed it.").

29

by filing suit in federal court within the 90-day filing period.[81]  Unlike her race discrimination claim, Plaintiff's claim for sexual harassment was filed in a timely judicial complaint, a fact which Defendant concedes.  Despite a clear pattern of tardiness and delay in prosecuting the second suit itself,[82] Plaintiff clearly pursued her claims with diligence after Bailey obtained the dismissal without her knowledge.  The record shows that Plaintiff contacted the clerk of court herself both by letter and

---

[81] The fact that Plaintiff did file a timely judicial complaint renders some of the typical factors for equitable tolling inapposite. *Truitt*, 148 F.3d at 648 (holding that the equitable tolling requires a case-by-case determination).  For example, the Court need not consider whether Plaintiff had actual or constructive knowledge of the filing requirements or whether she remained reasonably ignorant of the requirements.  The Court's analysis then is focused on Plaintiff's diligence, the possibility of prejudice to Defendant, and the conduct of Plaintiff's attorney.

[82] Although it is not clear how much Plaintiff was personally involved in the prosecution of the second suit, the manner in which the case was pursued was far from diligent.  No activity occurred in the case from its filing in July 2004 until February 2005, when the Court ordered Plaintiff to show cause as to why the matter should not be dismissed for failure to prosecute. *Gordon v. England*, no. 04-2572-SHM-dkv, Order to Show Cause, Feb. 5, 2005 (D.E. # 2).  Thereafter, a scheduling order was entered, and on February 22, 2006, Defendant filed a dispositive motion.  Plaintiff was granted an extension of time in which to respond to the motion until April 7, 2006.  Order Granting Mot. for Ext. Time, Mar. 17, 2006 (D.E. # 14).  When Plaintiff still did not respond by that date, the Court ordered her to show cause as to why the dispositive motion should not be granted, prompting Plaintiff to file a two-page brief on April 18, 2006.  Resp. in Opp'n Mot. Dismiss, Apr. 18, 2006 (D.E. # 16).

At the pretrial conference on May 5, 2006, the Court learned that Plaintiff intended to file a motion to amend her response brief, a motion that the Court later granted.  Minute Entry (D.E. # 18).  Defendant also informed the Court that Plaintiff had not filed any discovery or Rule 26 disclosures. *Id.*  Plaintiff never filed the amended response brief or produced the discovery.  Bailey did file the motion for voluntary nonsuit, which the Court in due course granted.

Based on the docket, the Court finds that the prosecution of Plaintiff's second case was hardly diligent.  Furthermore, Plaintiff admits that she did not check the status of her case with Bailey from December 2005 until she learned of the dismissal, which was granted in July 2006.  Gordon Dep. 284:11–15.  Plaintiff testified that Bailey would not return her calls but that was after the filing of the motion for voluntary nonsuit. *Id.* at 285:1–4.  Still, the Court finds that there is at least an inference to be drawn from these facts that Bailey was not informing Plaintiff of all of the developments in the second suit and that much of the problem lay with Bailey, not Plaintiff.

by telephone seeking information about her case.[83]  Plaintiff addressed a letter to the Court[84] and filed a *pro se* motion seeking reconsideration of the voluntary dismissal,[85] which she later withdrew.  As previously discussed, Plaintiff proceeded *pro se* to file this her third suit and pursued it successfully on appeal to the Sixth Circuit.  Under the circumstances, the Court finds that Plaintiff has acted diligently to pursue the claim.

Second, there is no evidence that equitable tolling of the sexual harassment claim will prejudice Defendant.  Defendant argues that it will suffer prejudice if the Court proceeds to the merits of Plaintiff's claim due to the passage of time and the unavailability of records related to the events alleged.  The Court finds this argument unpersuasive.  Other than making the argument in its brief, Defendant has not actually adduced any evidence of such prejudice.  While the possibility of faded memories is real in this case, Defendant has been on notice of Plaintiff's sexual harassment allegations since Plaintiff filed her EEO charge in 2001.  The only time in which Defendant might have reposed in the dismissal of the claim was the seven-month period between the voluntary dismissal of the second suit and Plaintiff's *pro se* motion to reconsider the dismissal.  Defendant has not shown that evidence was lost or ceased to become available in that span of time.[86]  Otherwise,

---

[83] Gordon Dep. 287:24–288:4.

[84] *Gordon v. England*, no. 04-2572-SHM-dkv, D.E. # 34.

[85] *Gordon v. England*, no. 04-2572-SHM-dkv, D.E. # 32, 33.

[86] By contrast, Plaintiff's claim for race discrimination was filed almost six months outside of the 90-day filing period, the judicial complaint in the first suit was never served on Defendant, and the complaint in the second suit was only served some time in March 2005.  In other words, Defendant first had notice of the judicial complaint alleging race discrimination more than two years after the original 90-day filing period had closed.  Based on this inexcusable delay, the two situations are clearly distinguishable.

31

Defendant has had a duty at all times since the filing of the EEO charge to defend against Plaintiff's sexual harassment claim, which includes a duty to preserve relevant evidence. The Court also observes that Defendant has presented a merits defense in its Motion for Summary Judgment along with documentary proof and affidavits. As a practical matter, this further undermines Defendant's argument on this point. In the absence of some additional showing of missing or unavailable evidence, the Court finds that the prejudice factor does not weigh against equitably tolling the sexual harassment claim.

Finally, the Court finds that Bailey's filing the motion for voluntary nonsuit without consulting his client is the kind of attorney conduct that would justify equitable tolling. The evidence shows that after having not engaged in discovery or filed a proper response to the pending dispositive motion, Bailey opted to seek voluntary dismissal. It is true that according to Bailey he filed the voluntary dismissal in order to avoid entry of judgment against his client.[87] Bailey also claims that he consulted other attorneys about taking the nonsuit and specifically what effect it would have on Plaintiff's ability to re-file her claim.[88] Bailey testified that he concluded Plaintiff would be able to re-file and intended to re-file the case on her behalf.[89] The fact remains that Plaintiff by her own account would not have agreed to the voluntary dismissal and that once Bailey filed the nonsuit, she was never able to communicate with him again. Viewing this evidence in the light most

---

[87] Bailey Dep. 64:7–11 ("And so I did not want the summary judgment to be issued - - I mean to be granted and we be at the Sixth Circuit of [sic] Appeals as opposed to being in the trial court with Judge Mays so I entered a nonsuit.").

[88] *Id.* at 68:20–70:5.

[89] *Id.* at 70:6–12 ("But I wanted to share with you what led to my filing that nonsuit. It wasn't that I was trying to throw her case under the bus. It was that I thought - - I really thought that I could re-file.").

favorable to Plaintiff, the Court concludes that Bailey acted without authority to dismiss what was at the time a live controversy, even if it was at the summary judgment stage.[90]   Furthermore, accepting Plaintiff's testimony on the matter, Bailey broke off communications with Plaintiff and in effect abandoned her after the dismissal of her case.   The Court finds this amounts to a circumstance that was largely beyond Plaintiff's control.[91]   Therefore, the Court concludes that equitable tolling for Plaintiff's claim for sexual harassment is warranted, and the Court will reach the merits of the claim.

## II.  Hostile Work Environment - Sexual Harassment

The Amended Complaint alleges in Count III that Defendant is liable for sexual harassment. Plaintiff alleges that on March 9, 2001, a co-worker Nathan Edwards physically assaulted her by grabbing Plaintiff from behind, holding her in a restraint hold by wrapping his hands around Plaintiff's breasts, and then thrusting his waist into Plaintiff's back.[92] During the assault, another co-

---

[90] This raises another material distinction between Plaintiff's race discrimination and her sexual harassment claims, which is highly relevant to the equitable tolling issue.  Plaintiff's first suit was untimely despite her actual and constructive knowledge of the 90-day filing deadline, facts which also reinforce the conclusion that Plaintiff failed to pursue the claim with diligence. The second suit, on the other hand, was timely filed within the 90-day filing period and properly before the Court until Bailey without authority moved to dismiss the case.  Under the circumstances, Bailey's unilateral conduct was the but for cause of the nonsuit on the sexual harassment claim; whereas, Plaintiff's own lack of diligence was at least a contributing factor in the prosecution of her race discrimination claim.

[91] *Graham-Humphreys*, 209 F.3d 560–61.  Once again, there is a significant difference between the circumstances surrounding Plaintiff's race discrimination claim and her sexual harassment claim.  As previously discussed, the prosecution of her race discrimination claim was largely under Plaintiff's control in that she had knowledge of the filing deadline and failed to pursue the claim diligently.  The prosecution of her sexual harassment claim, and most importantly the voluntary dismissal of the claim, was strictly speaking beyond her control.

[92] Am. Compl. 9, ¶¶ 1–2.

worker took a photograph and others stood by and did not intervene.[93]  Plaintiff further alleges that Rossman failed to discipline Edwards or the other co-workers who were present.[94]

Defendant argues in the Motion for Summary Judgment that even if the Court equitably tolls Plaintiff's claim for sexual harassment and reaches the merits of the issue, Defendant would nevertheless be entitled to judgment as a matter of law.  Defendant contends that the misconduct of Plaintiff's co-worker Nathan Edwards was isolated and limited to a single day.  Plaintiff cannot show therefore that the workplace was permeated with sexual harassment.  As for Plaintiff's allegation that other co-workers participated in the events of March 9, 2001, Defendant argues that there is no evidence that their alleged acts were motivated by Plaintiff's gender.  As such, Defendant takes the position that the conduct did not create an objectively hostile environment.

Defendant goes on to argue that Plaintiff cannot show that management failed to respond to Plaintiff's complaint or take other remedial action.  After Plaintiff reported the harassment of March 9, her supervisor Rossman immediately investigated the complaint and took disciplinary action. There is no evidence that the harassment continued or was ever repeated.  Finally, Defendant argues that Plaintiff is not entitled to choose the manner in which her co-workers were disciplined.  The Amended Complaint alleges that Rossman failed to remove the co-workers who engaged in the offensive conduct.  According to Defendant, the evidence shows Rossman ordered Edwards to attend sexual harassment training and the witnesses to Edwards's acts to apologize to Plaintiff.  Based on this record, Defendant argues that Plaintiff cannot prove her claim for sexual harassment.

---

[93] *Id.* ¶ 3, 5.

[94] *Id.* at 10, ¶¶ 8, 10.

In her response in opposition, Plaintiff argues that she has adduced evidence to make out her claim for hostile work environment. Plaintiff denies that the March 9 incident involving Edwards was isolated. Plaintiff reviews evidence of what she believes was racial discrimination and harassment on the basis of her race that together with Edwards's acts created a hostile work environment. For example, Plaintiff cites evidence that Rossman posted a picture in his office of what appeared to be an ape, an image that she found offensive. When Plaintiff complained to Rossman about the picture and asked him to remove it, Rossman refused. Plaintiff further alleges that Rossman posted the picture after Plaintiff refused to accept changes in her job duties. Plaintiff adds that she was overlooked for promotion, denied for leave requests, harassed about her lunch breaks, and treated differently than other employees during performance reviews. Plaintiff asserts then that she has proffered enough evidence to create triable issues of fact about whether the workplace was objectively hostile. Therefore, Plaintiff asks the Court to deny Defendant's Motion on this issue.

Title VII prohibits discrimination that is "so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment."[95] In order to establish a prima facie case of sexual harassment based on a hostile work environment, a plaintiff must demonstrate the following elements: (1) that she is a member of a protected class (female); (2) that she was subjected to harassment, either through words or actions, based on sex; (3) that the harassment had the effect of unreasonably interfering with the plaintiff's work performance and creating an objectively intimidating, hostile, or offensive work environment; and (5) there exist some

---

[95] *Hafford v. Seidner,* 183 F.3d 506, 512 (6th Cir. 1999) (quoting *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67 (1986)).

basis for liability on the part of the employer.[96]  The Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment."[97]  Conduct that is "merely offensive" is insufficient to support a hostile work environment claim.[98]

Defendant does not dispute that the March 9, 2001, incident occurred or that Edwards sexually harassed Plaintiff.  Defendant essentially contests the third and fourth factors of Plaintiff's claim, namely, whether there was an objectively hostile work environment and if so whether Defendant should be liable to Plaintiff.  Viewing the record evidence in the light most favorable to Plaintiff, the Court holds that Defendant is entitled to judgment as a matter of law on this claim. With respect to whether the alleged harassment had the effect of unreasonably interfering with plaintiff's work performance and creating an objectively intimidating, hostile, or offensive work environment, an employee is not required to show that the alleged harassment was both subjectively and objectively severe and pervasive.[99]  Rather, she need only show that "the [work] environment is objectively hostile and the harassment is subjectively severe and pervasive."[100]  Whether Plaintiff subjectively viewed the alleged harassment as severe and pervasive "is quintessentially a question

---

[96] *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 270 (6th Cir. 2009) (citation and quotation marks omitted)).

[97] *Faragher v. Boca Raton,* 524 U.S. 775, 788 (1998).

[98] *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993).

[99] *Gallagher*, 567 F.3d at 274.

[100] *Id.*; *see also Williams v. Gen. Motors Corp.*, 187 F.3d 553, 568 (6th Cir. 1999) ("[t]he focus of the objective/subjective inquiry should remain on (1) whether a reasonable person would find the environment objectively hostile, and (2) whether the plaintiff subjectively found the conduct 'severe or pervasive.' ").

of fact."[101]   The Court, therefore, declines to evaluate the subjective element of the alleged harassment at the summary judgment stage.

The question before the Court then is whether a fact issue exists as to whether a reasonable person could have found the work environment to be objectively hostile.  The Court must look at the totality of the circumstances to analyze whether the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.[102] Appropriate factors to consider include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[103]  "Isolated incidents. . ., unless extremely serious, will not amount to discriminatory changes in the terms or conditions of employment."[104]  Additionally, the law draws a distinction between harassment and harassment that is based on a plaintiff's protected status.[105]  Therefore, only incidents that occurred because of a plaintiff's gender are properly considered in the context of a claim of hostile work environment.[106]

Before considering the merits of Plaintiff's claim and the evidence in the record, the Court pauses to address an argument Plaintiff makes in response to the summary judgment motion.  In

---

[101] *Jordan v. City of Cleveland*, 464 F.3d 584, 597 (6th Cir. 2006) (citation and internal quotation marks omitted).

[102] *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 707 (6th Cir. 2007) (citation and quotation makes omitted).

[103] *Id.* (quoting *Harris,* 510 U.S. at 23).

[104] *Bowman,* 220 F.3d at 463.

[105] *Howard v. Bd. of Educ. of Memphis City Schs.*, 70 F. App'x 272, 282 (6th Cir. 2003).

[106] *Id*. (citations omitted).

support of her sexual harassment claim, Plaintiff has cited other evidence about her treatment in the workplace, including racial discrimination, to prove the existence of a generally hostile work environment. Plaintiff's brief states, "In addition to the sexual harassment the plaintiff suffered on March 9, 2001, the plaintiff also suffered discrimination and harassment on a day to day basis creating a hostile work environment. . . . The plaintiff in the case at hand suffered from a racially hostile work environment."[107] The Court finds this argument problematic for several reasons. First, Plaintiff's Amended Complaint has alleged only a claim of hostile work environment on the basis of the sexual harassment incident of March 9, 2001. Plaintiff has not alleged a hostile work environment claim on the basis of her race, which is a distinct claim for relief requiring a different analysis. On this basis alone, the Court would reject Plaintiff's argument that discrete acts of discrimination on the basis of her race would go to show a generally hostile work environment. Second, the acts of racial discrimination Plaintiff cites formed the basis for her first EEO charge, which the Court has now held to be time-barred. To the extent that the first EEO charge can be construed to allege a hostile work environment on the basis of Plaintiff's race, that claim would now be untimely.[108] Third, in order to prove her hostile work environment claim for sexual harassment, Plaintiff has the burden to show she was subjected to harassment based on her sex.[109] Plaintiff has not shown how evidence of race discrimination is relevant to her sexual harassment claim. It is true that "non-sexual harassing conduct may be deemed to be based on sex if the plaintiff is otherwise

---

[107] Pl.'s Resp. in Opp'n 12.

[108] Plaintiff's first EEO charge alleged that Rossman had harassed her in a variety of ways on the basis of her race. Def.s' Mot. Summ. J., ex. 1 (D.E. # 138-4).

[109] *Gallagher*, 567 F.3d at 270.

able to show that, but for the fact of her sex, she would not have been the object of the harassment."[110]   As such, it is plausible that the same evidence to prove race discrimination might also be relevant to a claim for sexual harassment.   However, Plaintiff must show that she suffered the conduct because of her gender as well as her race.   Plaintiff has not made that showing here.   For these reasons, the Court declines to consider evidence of race-based discrimination in support of Plaintiff's claim for sexual harassment.

Based on the record before the Court, Plaintiff has arguably shown that the single event of March 9, 2001, created an objectively hostile work environment.   The Court begins by emphasizing that the alleged conduct was severe and physically threatening.   Viewing the evidence in the light most favorable to Plaintiff, Edwards forcibly held Plaintiff with his arms wrapped around her breasts and at the same time pushed his pelvis into Plaintiff's buttocks.   Plaintiff struggled to get away from Edwards while other co-workers stood by without intervening or assisting her.   Whatever Edwards's actual intent was, his conduct was buffoonish and of such a sexual and offensive character that it cannot be justified under any circumstances.   Edwards's actions were also physically threatening in a way that goes beyond an offensive prank or utterance.   At the same time, Plaintiff has adduced evidence of only this single, isolated incident of sexual harassment in the workplace.   There is no suggestion that such incidents had taken place prior to March 9, 2001, or at any time after that.   The Supreme Court has remarked that a hostile work environment claim "cannot be said to occur on any particular day."[111]   Because the Court holds that Defendant is entitled to summary judgment on other

---

[110] *Id.* at 271.

[111] *Clay*, 501 F.3d at 708 (quoting *Ledbetter v. Goodyear Tire & Rubber Co.,* 550 U.S. 618, 638 (2007) (superseded by statute on other grounds) and *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 115–16 (2002)).

grounds, it need not resolve whether the alleged harassment of a single day created an objectively hostile workplace.

Fatal to Plaintiff's prima facie case for sexual harassment is her failure to create a triable issue about Defendant's liability.  It is well-settled that employers are not automatically liable for sexual harassment perpetrated by their employees.[112]  An employer's liability for sexual harassment committed by a non-supervisory co-worker "depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action."[113]  In other words, the employer is liable "if its response manifests indifference or unreasonableness."[114]  The employer's response is appropriate if it is "reasonably calculated to end the harassment."[115]  The Sixth Circuit has commented that "[w]hen an employer responds with good-faith remedial action, we cannot say that the employer has itself committed an act of discrimination."[116]

Here it is undisputed that Defendant had a policy prohibiting sexual harassment and pursuant to the policy, Plaintiff reported Edwards's conduct to her supervisor on March 26, 2001.  There is no evidence that sexual harassment was pervasive in the workplace or that Rossman had reason to

---

[112] *Gallagher*, 567 F.3d at 274–75 (citing *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, (1998); *Faragher*, 524 U.S. at 775) (other citations omitted)).

[113] *Id.* (citation omitted).

[114] *Id.* (citation omitted).

[115] *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 340 (6th Cir. 2008) (quotation omitted).

[116] *Mullins v. Goodyear Tire & Rubber Co.*, 291 F. App'x 744, 747 (6th Cir. 2008) (quoting *Blankenship v. Parke Care Ctrs., Inc.*, 123 F.3d 868, 873 (6th Cir. 1997)).

be aware of the incident prior to that date.[117]  When Plaintiff met with Rossman, Plaintiff demanded

an apology from Edwards and the other witnesses to the incident.  Rossman immediately investigated

the allegation, questioning Edwards and other co-workers about what happened.  Rossman then met

with Plaintiff and Edwards, where Edwards apologized to Plaintiff and promised that it would not

happen again.  Rossman then had another meeting with the co-workers who were present during the

incident and urged them to apologize to Plaintiff.  All of these steps to resolve the situation were

taken on March 26, 2001, the same day Plaintiff made her initial report.  On the following morning,

Plaintiff's co-workers also made an apology.

It is further undisputed that when additional information came to light, Rossman took further

action to remedy the situation.  Some time later, Rossman obtained a copy of the picture taken by

another employee during the incident.  Although the photograph was not clear,[118]  Rossman

questioned Edwards about it again on May 22, 2001, because the photograph was somehow at odds

with the account Edwards had previously given.  As a result of this second meeting, Rossman found

that Edwards had not been truthful and imposed on Edwards a three-day suspension without pay and

ordered him to attend the next scheduled class on prevention of sexual harassment.

Based on this undisputed evidence, the Court holds that Defendant's response to the report

of sexual harassment was adequate and reasonable, thereby relieving Defendant of any liability.  The

record shows that Plaintiff's supervisor responded to her claim with a quick and thorough

investigation the same day Plaintiff made her complaint.  Following this investigation, Plaintiff

---

[117] *Cf. Jackson v. Quanex Corp.*, 191 F.3d 647, 663 (6th Cir. 1999).

[118] A grainy, black-and-white photocopy of the picture is part of the record.  D.E. # 144-2.
Due its poor quality and resolution, the Court finds that not much can be seen in the exhibit.

received the very relief she had demanded, apologies from Edwards and the others who saw the incident.  When new information became available to Rossman some weeks later, he questioned Edwards further, suspended him for three days without pay, and sent him to training on the prevention of sexual harassment.  The only argument Plaintiff makes to suggest that Defendant's response was inadequate or showed an indifference to her claim is the fact that the other employees who were present were not ordered to complete the same training.  Although Plaintiff claims that her co-workers cheered Edwards on during the incident, it cannot be said that their conduct was as culpable; there is no evidence that any other employee offensively touched or physically threatened Plaintiff in the same way Edwards did.  Furthermore, Plaintiff "may not dictate an employer's action against a co-worker."[119]   The Court would also note that there is no evidence of prior complaints of sexual harassment against Edwards specifically or in Plaintiff's workplace generally.[120]   Nor is there any evidence of sexual harassment allegations against anyone working under Rossman's supervision or in this duty station generally after March 2001.[121]   Under the circumstances, the Court holds that Defendant's response to the allegations did not manifest an indifference to Plaintiff's allegations and was reasonably calculated to insure that harassment did not recur in the future.  Therefore, Defendant's Motion for Summary Judgment is **GRANTED** as to this claim.

---

[119] *Blankenship*, 123 F.3d at 874.

[120] *Cf. Hawkins*, 517 F.3d at 342 (discussing greater requirements for employer's response to allegations about a "serial harasser").

[121] *Jackson*, 191 F.3d at 663 ("Significantly, a court must judge the appropriateness of a response by the frequency and severity of the alleged harassment.") (citation omitted).

## CONCLUSION

The Court concludes that Plaintiff has not shown that equitable tolling for her race discrimination claim would be appropriate in this case. None of the typical factors weigh in favor of equitable tolling, and Plaintiff has not shown that her attorney abandoned her claim or engaged in any kind of misconduct that might support equitable tolling. Therefore, Plaintiff's claim for race discrimination is dismissed as time-barred.

The Court concludes that Plaintiff has established that equitable tolling for her sexual harassment claim is warranted. Plaintiff has proven that she acted diligently in pursuing the claim and that Defendant would not suffer prejudice. More importantly, Plaintiff's case was dismissed for reasons beyond her control where her attorney filed a motion for voluntary nonsuit without first informing her or obtaining her consent. Therefore, equitable tolling is justified for Plaintiff's claim for sexual harassment.

Nevertheless, the Court holds that Defendant is entitled to summary judgment on Plaintiff's claim for sexual harassment. Plaintiff has not adduced evidence from which a reasonable juror might conclude that Defendant acted with indifference to her complaint of sexual harassment or failed to take action to prevent future instances of sexual harassment. Therefore, Defendant's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: July 6, 2012.

43